IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

**DALTON GAGE HILL**, Administrator )
And Personal Representative )
Of the Estate of Jeffery Allen Hill, deceased, )
)
          Plaintiff, )
)
v.                        ) Case No. CIV-24-1298-J
)
  (1) OKLAHOMA COUNTY )
CRIMINAL JUSTICE AUTHORITY, )
  (2) BOARD OF COUNTY )
COMMISIONERS for Oklahoma County, )
  (3) OKLAHOMA OFFICE OF )
MANAGEMENT AND ENTERPRISE )
SERVICES, )
  (4) TURN + KEY HEALTH, and )
DR. MARK WINCHESTER, and )
NURSES; SARAH CHANCE and )
RACHEL LEVINGSTON and )
DENISE KOVACH and )
SANDI ZOSKI and )
CHRISTINA THOMPSON, )
  (5) OKLAHOMA DEPARTMENT OF )
CORRECTIONS, )
  (6) DIRECTOR STEVEN HARPE, )
  (7) DEPUTYS JOHN DOES #1-3, )
  (8) SSM HEALTH, ST. ANTHONY )
HOSPITAL – MIDTOWN )
  (9) DR. TERRY DEASON, DDS )
  (10)    BRANDI GARNER, OK )
COUNTY DETENTION CENTER JAIL )
ADMINISTRATOR, )
AND )
  (11)    OKLAHOMA COUNTY )
DETENTION CENTER, )
)
)
          Defendants. )

**COMPLAINT**

COMES NOW, the Plaintiff, Dalton Gage Hill ("Plaintiff"), as the Administrator and

Personal Representative of the Estate of Jeffery Hill ("Mr. Hill"), deceased, by then through his

attorney of record, in the above styled case, and for his Complaint against the Defendants, states and alleges as follows:

## PARTIES

1. Plaintiff Dalton Hill, as Personal Representative of the Estate of Jeffery Hill, deceased, is a citizen of the State of Oklahoma and Personal Representative of Mr. Hill's Estate. Mr. Hill was Plaintiff's late father.

2. Jeffery Hill was a citizen of the United States and resided at the Oklahoma County Detention Center ("OCDC"), Oklahoma County, at the time these events occurred. Dalton Hill is Mr. Hills's son. On April 16, 2024, Mr. Dalton Hill was appointed the Personal Representative of the Estate of Jeffery Allen Hill, Deceased, by Order of the Honorable Elizabeth Kerr, in the District Court of Oklahoma County, State of Oklahoma (Case No. Pb-24-259). He is a citizen of the United States and a resident of Oklahoma.

3. Defendant, OCCJA is a statutorily-created, governmental entity. In Oklahoma, any tort action against the state or its political subdivisions must name that entity as defendant. See 51 O.S. § 163 (C). Under Oklahoma's Governmental Tort Claims Act ("GTCA"), the governmental entity "assumes liability for loss resulting from the torts of its employees acting within the scope of their employment and such liability is exclusive and in place of all other liability of an employee at common law or otherwise." *Shepard v. CompSource, Oklahoma,* 209 F.3d. 288, 294 (Okla. 2009). OCDC is a proper governmental Defendant in this action and is vicariously liable for the torts of its personnel acting within the scope of employment.

4. Defendants, Oklahoma County Detention Center ("OCDC") and Brandi Garner ("Garner") is the Jail Administrator of OCDC in Oklahoma County, Oklahoma, residing

in Oklahoma and acting under color of state law.  Defendant,  Garner at times relevant hereto, was responsible for ensuring the safety and well-being of all inmates detained and housed at the OCDC including the provision of appropriate medical care and treatment to inmates in need of such care, pursuant to 57 Okla. Stat. § 47.  In addition, Garner was, at all times pertinent hereto, responsible for creating, adopting, approving, ratifying, and enforcing the rules, regulations, policies, practices, procedure, and/or customs of OCDC, including the policies, practices, procedures, and/or customs that violated Mr. Hill's rights as set forth in this Complaint. The Jail Administrator is sued purely in her official capacity.  It is well-established, as a matter of Tenth Circuit authority, that a § 1983 claim against a Jail Administrator/Sheriff  in her official capacity "it's the same as bringing a suit against the county." *Martinez v. Beggs*, 563 F.3d 1082, 1091 (10th Cir. 2009).  See also *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010); *Bame v. Iron Cnty.,* 566 F. App'x 731, 737 (10th Cir. 2014).  Thus, in suing the Jail Administrator in her official capacity, Plaintiff has brought suit against the Oklahoma County Criminal Justice Authority ("OCCJA").

5.  Defendant Turn Key Health Clinics, LLC ("Turn Key") is an Oklahoma limited liability company doing business in Oklahoma County, Oklahoma.  Turn Key is a private correctional health care company that contracts with counties, including Oklahoma County, to provide medical professional staffing, supervision and care in county jails. Turn Key was, at times relevant thereto, responsible, in part, for providing medical services, supervision and medication to Mr. Hill while he was in custody at the Jail.  Turn Key was additionally responsible, in part, for creating, implementing and maintaining policies, practices and protocols that govern the provision of medical and mental health care to inmates at the Jail, and for training and supervising its employees.  Turn Key was endowed by Oklahoma County with powers or functions governmental in nature, such

that Turn Key became an agency or instrumentality of the State and subject to its constitutional limitations.

6. Defendant, Board of County Commissioners for Oklahoma County ("BOCC") is the legislative entity with non-delegable statutory responsible for providing a jail facility for Oklahoma County, Oklahoma that is adequate for the safe-keeping of inmates at the Jail. *See* 57 O.S. § 41. As a matter of Oklahoma law, BOCC exercises the powers of the county. *See* 19 Okla. Stat. § 3. A suit brought against BOCC is the way Oklahoma law contemplates suing the county. *See* 19 Okla. Stat. § 4. BOCC is charged with ensuring the Jail has adequate funding and resources to provide constitutionally sufficient conditions of confinement.

7. Defendant Dr. Mark Winchester, ("Dr. Winchester") is a citizen of Oklahoma. Dr. Winchester was, at all times relevant hereto, acting under color of state law as an employee and/or agent of Turn Key/Oklahoma County. Dr. Winchester was, in part, responsible for overseeing Mr. Hill's health and well-being, and assuring that Mr. Hill's medical/mental health needs were met, during the time he was in the custody of the Jail. Dr. Winchester is being sued in his individual capacity.

8. Defendant SSM Health Care Corporation is a foreign corporation and is in the business of providing healthcare in the state of Oklahoma with its registered service agent in Oklahoma County, Oklahoma. SSM Health is a tradename for SSM Health Care of Oklahoma, Inc., which provides health care services in Oklahoma with its registered service agent in Oklahoma County. SSM Health St. Anthony Hospital – Midtown is a tradename for St. Anthony Oklahoma City Hospital, Inc., which does business in Oklahoma County in Oklahoma and has its registered service agent in Oklahoma County. SSM Health Medical Group is a tradename for SSM Health Medical Group of Oklahoma, Inc. and Saints Medical Group, LLC which is in the business of employing physicians to provide medical care to patients in SSM Health and SSM Health Care Corporation

4

facilities throughout the state. Its registered service agent is in Oklahoma County. SSM Health, SSM HealthCare Corporation, SSM Health St. Anthony Hospital- Midtown, and SSM Health Medical Group are hereinafter collectively referred to as "SSM entities". The venue and forum is proper under any applicable venue statue. All corporations and companies act by and through their officers, directors, employees, and agents. Defendant Terry Deason, DDS ("Dr. Deason") is a dentist employed by SSM Health. Dr. Deason was responsible for the wisdom tooth extraction that never occurred. Dr. Deason is being sued in his individual capacity.

9. Defendant, Nurse Denise Kovach, ("Nurse Kovach") is a citizen of Oklahoma. Nurse Kovach was, at all times relevant hereto, acting under color of state law as an employee and/or agent of Turn Key/Oklahoma County. Nurse Kovach was, in part, responsible for overseeing Mr. Hill's health and well-being, and assuring that Mr. Hill's medical/mental health needs were met, during the time he was in the custody of the Jail. Nurse Kovach is being sued in her individual capacity.

10. Defendant, Nurse Sandi Zoski, ("Nurse Zoski") is a citizen of Oklahoma. Nurse Zoski was, at all times relevant hereto, acting under color of state law as an employee and/or agent of Turn Key/Oklahoma County. Nurse Zoski was, in part, responsible for overseeing Mr. Hill's health and well-being, and assuring that Mr. Hill's medical/mental health needs were met, during the time he was in the custody of the Jail. Nurse Zoski is being sued in her individual capacity.

11. Defendant, Nurse Christina Thompson, ("Nurse Thompson") is a citizen of Oklahoma. Nurse Thompson was, at all times relevant hereto, acting under color of state law as an employee and/or agent of Turn Key/Oklahoma County. Nurse Thompson was, in part, responsible for overseeing Mr. Hill's health and well-being, and assuring that Mr. Hill's medical/mental health needs were met, during the time he was in the custody of the Jail. Nurse Thompson is being sued in her individual capacity.

12. Defendant, Nurse Rachel Levingston ("Nurse Levingston") is a citizen of Oklahoma. Nurse Levingston was, at all times relevant hereto, acting under color of state law as an employee and/or agent of Turn Key/Oklahoma County. Nurse Levingston was, in part, responsible for overseeing Mr. Hill's health and well-being, and assuring that Mr. Hill's medical/mental health needs were met, during the time he was in the custody of the Jail/Oklahoma County. Nurse Levingston is being sued in her individual capacity.

13. Defendant, Nurse Sara Chance ("Nurse Chance") is a citizen of Oklahoma. Nurse Chance was, at all times relevant hereto, acting under color of state law as an employee and/or agent of Turn Key/Oklahoma County. Nurse Chance was, in part, responsible for overseeing Mr. Hill's health and well-being, and assuring that Mr. Hill's medical/mental health needs were met, during the time he was in the custody of the Jail/Oklahoma County. Nurse Chance is being sued in her individual capacity.

14. At all times relevant hereto, Defendant Steven Harpe ("Harpe") was the Director of the Oklahoma Department of Corrections ("DOC"), acting under color of state law. On information and belief, Harpe, as Director of the DOC, was responsible for the supervision and conduct of all DOC matters, and was responsible for the training, supervision, and conduct of all DOC personnel, including the Defendants referenced herein. As Director, Harpe was also responsible for the care, custody, and control of all inmates housed in the DOC's prisons, including the creation, promulgation, implementation, and oversight of policies and programs governing on-site medical treatment programs for inmates of prison facilities, including OCDC. In addition, at all relevant times, Harpe was responsible for enforcing the rules of the DOC, and for ensuring that DOC personnel obeyed the laws of the United States and of the State of Oklahoma.

15. At all times relevant hereto, Defendant Deputies John Does # 1-3 were the Representatives of

The DOC and/or the OCDC, acting under color of state law. As Representatives, their Responsibilities included the care, custody, and control of all inmates, as well as the supervision of all staff. They were responsible for the creation, promulgation, implementation, and oversight of policies and programs governing on-site medical treatment of inmates at awaiting transfer at OCDC. As Representatives, John Does had a duty to ensure the physical safety and wellbeing of the people incarcerated at OCDC awaiting transfer and to provide them with fundamental human necessities, including medical care. Defendants Harpe and Deputies John Does (collectively "the Defendants") were, at all times relevant hereto, senior officials who exercised policymaking, supervisory, and disciplinary authority on behalf of the DOC. The Senior Defendants are sued in their individual capacities.

## JURISDICTION AND VENUE

1. The jurisdiction of the Court is invoked pursuant to 28 U.S.C § 1343 to secure protection of and to redress deprivations of rights secured by the Eighth and/or Fourteenth Amendment to the United States Constitution as enforced by 42 U.S.C. § 1983, which provides for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law.

2. This Court also has original jurisdiction under 28 U.S.C. § 1331 to resolve a controversy arising under the Constitution and the laws of the United States, particularly the Eighth and/or Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

3. This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367, since the claims form part of the same case and controversy arising under the United States Constitution and federal law.

4. Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this judicial District.

5. Prior to bringing the Complaint in this action, Plaintiff complied with the tort claim notice provisions of the Oklahoma Government Tort Claim Act ("GTCA"), 51 O.S. § 151 *et seq* notifying Defendants of his intent to file state law claims in connection with the events and injuries described herein. The GTCA process has been exhausted. This action was timely brought pursuant to 51 O.S. § 157.

### JURY DEMAND

6. Plaintiff demands trial by jury in this action.

### FACTUAL ALLEGATIONS

7. Plaintiff re-alleges and incorporates by reference each paragraph of this Complaint, as though fully set forth herein.

8. Mr. Hill was booked into the OCDC on or about November 15, 2023.

9. On January 5, 2024 in Oklahoma County CF-2023-595, Mr. Hill was sentenced to life in prison on Count 1: Leaving the Scene of a Fatal Accident and Count 2: Driving a Vehicle Without a Valid Driver's License to the Department of Corrections after a blind plea to Judge Truong. Judge Truong set a one year judicial review on December, 18, 2024.

10. On information and belief, on January 9, 2024 Mr. Hill told Deputy John Doe #1 about his severe toothache.

11. On information and belief, on January 10, 2024 Mr. Hill told Deputy John Doe #2 about his severe toothache.

12. On information and belief, on January 12, 2024 and January 13, 2024 Mr. Hill complained about his pain to Deputy Doe #3.

13. On January 18, 2024 Mr. Hill complained to Turn Key staff about pain in his back right wisdom tooth and reported it's "sawn in half". On January 18, 2024, Rachel Levingston and/or Christy Thompson scheduled Mr. Hill to be examined by a dentist on January 19, 2024 which was a day when the dentist was not present.

14. On January 18, 2024 Mr. Hill was rescheduled to January 22, 2024 to be examined by a dentist by Dr. Winchester after Mr. Hill complained of wisdom tooth pain. Additionally, Dr. Winchester started Mr. Hill on Penicillin VK 500 milligrams twice daily for ten (10) days with a refill if his dental appointment is delayed. Dr. Winchester did not exercise the skill and judgment a reasonable careful hospitalist physician would in the same and similar circumstances. Dr. Winchester's actions constitute negligence.

15. On information and belief, on January 19, 2024 Mr. Hill called his son and complained to him about tooth. Mr. Hill also complained to Deputy John Doe #3. After a full week of complaining about his tooth, Mr. Hill was found in severe pain and unresponsive by a detention officer in his cell and was transferred by EMSA from OCCJA to St. Anthony's Hospital on January 22, 2024.

16. On January 23, 2024 Mr. Hill had emergency surgery to be placed on a ventilator through a tracheotomy for an allergic reaction to Penicillin. On January 24, 2024 Nurse Kovach reported Mr. Hill was unable to swallow due to swelling in his neck and mouth.

17. On January 25, 2024 Mr. Hill was examined by Terry Deason, DDS ("Dr. Deason") while in St. Anthony Hospital. Dr. Deason notes that Mr. Hill had a severe reaction to Penicillin and goes on to state "Mr. Hill had to be hospitalized and while there, had his wisdom tooth removed." however, Mr. Hill's tooth was not ever extracted.

18. On information and belief, Mr. Hill languished in agony at St. Anthony's hospital for a week without the necessary tooth extraction that could have saved his life.

19. Mr. Hill became septic on January 29, 2024 with multi-organ failure.

20. Mr. Hill dies on January 30, 2024 of sepsis due to an infected tooth.

21. On information and belief, Defendants failed and refused to provide Mr. Hill with necessary medication for weeks prior to his death.  For weeks, Mr. Hill was exhibiting clear signs of acute infection due to Defendant's failure to provide him with adequate medical treatment.  Nevertheless, despite his obvious, emergent and serious need, Defendants denied Mr. Hill this vital treatment.

22. On information and belief, Mr. Hill spent his final days lying in a cell moaning and grumbling to himself.  He was in extreme pain and suffering from sepsis.

23. On information and belief, at least a week before his death, Mr. Hill stopped eating food.  Yet, Defendants took no measures to protect Mr. Hill from the obvious and excessive risks of lack of nutrition.

24. Deputies John Doe 1, John Doe 2, and John Doe 3 (collectively "Jailer Defendants") all had personal knowledge that Mr. Hill was not receiving proper medical treatment , was not eating, was immobile, and was in severe pain during his time at the Jail.

25. Nevertheless, with deliberate indifference, the Jailer Defendants failed to ensure that Mr. Hill received the medical care his so obviously and desperately needed.

26. Had Mr. Hill been provided his necessary medical treatment, his prolonged pain, suffering and death would have been averted.

27. Had Mr. Hill received proper supervision, including medical supervision, his prolonged pain, suffering and death would have been averted.

28. Had Mr. Hill received adequate and timely medical care, his prolonged pain, suffering and death would have been averted.

29. Had the Jailer Defendants, and other Jail personnel, not been deliberately indifferent to the obvious, known, and serious risks that Mr. Hill, in his condition at the time, faced while in their custody, his prolonged pain, suffering and death would have been averted.

30. Deputy John Doe #2 encountered Mr. Hill in a highly un-responsive state on January 22, 2024. Had Deputy John Doe notified EMSA at this time, Mr. Hill would likely still be alive.

31. Indeed, Mr. Hill was in obvious need of emergent and urgent care for weeks prior to his death. His condition was obvious and known to the Jailer Defendants. The Jailer Defendants' failure to take any action to assist Mr. Hill with his dire and deteriorating condition constitutes utter disregard of the obvious and substantial risks to Mr. Hills' health and safety.

32. OCCJA failed to properly screen Mr. Hill during his intake at the Jail. Had proper mental and physical health screening been performed, and proper treatment and supervision recommended and implemented, Mr. Hill would not have endured the unnecessary, prolonged pain and suffering; and grotesque death that he did. Due to his serious tooth infection and need for medication and medical attention, Mr. Hill should have been immediately transported to an urgent care facility. It was inappropriate and reckless for Mr. Hill to remain at the Jail.

33. The Medical Examiner's Report provides further evidence that Mr. Hill was in severe pain in his final weeks. The report notes discoloration of the left throat and face and severe swelling.

34. The Medical Examiner additionally reports that penicillin was found in Mr. Hill's system. Mr. Hill is allergic to penicillin and this allergy is noted in his medical file. This is additional evidence that Mr. Hill was not receiving proper medication at the Jail, in reckless and deliberate indifference to his known, obvious and substantial medical needs.

35. Mr. Hill suffered and died as a direct and proximate result of Defendants' reckless and unconscionable neglect and deliberate indifference.

36. There is a causal nexus between Mr. Hills' Constitutional injuries and policies and/or customs for which Garner possessed responsibility. These were County policies and/or customs for which Garner remains liable in her official capacity.

37. To the extent there was any medical delivery system at the Jail, it was completely inadequate, and virtually nonexistent. On information and belief, OCCJA had no written policies governing inmate health care, and to the extent any such written policies existed they were neither followed nor enforced.

38. As a matter of policy and/or custom, inmates at the Jail were *not* provided with: appropriate or adequate medical assessments; medical treatment plans; mental health assessments or evaluations; monitoring of medical or mental health; access to mental health or medical personnel capable of and willing to, properly evaluate and treat serious mental health or medical needs; emergent mental health care; and/or precautionary measures to prevent injury.

## CLAIMS FOR RELIEF

**Cruel and Unusual Punishment in Violation of the Eighth and Fourteenth Amendments to the Constitution of the United States (Non-Existent or Inadequate Medical and Mental Health Care)**

**(42 U.S.C. § 1983)**

A. **Allegations Applicable to Defendants DOC, OCCJA, Turn Key and Turn Key nurses and Dr. Winchester, Jail Administrator Garner and Jailer Defendants, SSM Entities and Dr. Deason, DDS.**

39. Plaintiff re-alleges and incorporates by reference each paragraph of this Complaint, as though fully set forth herein.

40. Mr. Hill had obvious, severe and emergent medical needs made known to the Defendants prior to his death.

41. Nevertheless, Defendants disregarded the known and obvious risks to Mr. Hills' health and safety.

42. Defendants failed to provide Mr. Hill with, *inter alia*: timely or adequate medical treatment; proper or adequate medical monitoring and supervision; necessary medications; appropriate or adequate medical assessments; medical treatment plans; mental health assessments or evaluations; access to mental health or medical personnel capable of, and willing to, properly evaluate and treat serious mental health or medical needs; emergent mental health care; and precautionary measures to prevent injury. The failure to provide these basic health care measures constitutes deliberate indifference to Mr. Hills' serious medical needs health and safety.

43. As a direct and proximate result of Defendants' conduct, Mr. Hill experienced physical pain, severe emotional distress, mental anguish, loss of consortium, loss of life, and the damages alleged herein.

**B. Supervisor Liability (Applicable to Jail Administration, in their individual capacity).**

44. Plaintiff re-alleges and incorporates by reference each paragraph of this Complaint, as though fully set forth herein.

45. There is an affirmative link between the aforementioned acts and/or omissions of Defendants in being deliberately indifferent to Mr. Hill's serious medical needs and policies, practices and/or customs that the Jail Administrator promulgated, created, implemented and/or possessed responsibility for.

    Such policies, practices, and/or customs include, but are not limited to:

    a. Severe limitation of the use of off-site medical and diagnostic service providers, even in emergent situations;

    b. Nonexistent mental health and/or medical assessments, examinations and treatment;

c. Understaffing (i.e., no access to health care professionals and severely limited or nonexistent access to on-site health professions);

d. Nonexistent or inadequate training regarding health care;

e. Fostering an atmosphere and a system of indifference to the serious health and medical needs of inmates like Mr. Hill; and

f. Utterly inadequate mental health and/or medical supervision of staff and inmates.

46. Jail Administration knew it was obvious that the maintenance of the aforementioned policies, practices and/or customs posed an excessive risk to the health and safety of inmates like Mr. Hill.

47. Jail Administration disregarded the known and/or obvious risks to the health and safety of inmates like Mr. Hill.

48. Jail Administration, through their continued encouragement, ratification and approval of the aforementioned policies, practices and/or customs, in spite of their known and/or obvious inadequacies and dangers, has been deliberately indifferent to inmates', including Mr. Hill's serious medical needs.

49. There is an affirmative link between the unconstitutional acts of their subordinates and adoption and/or maintenance of the aforementioned policies, practices and/or customs.

50. As a direct and proximate result of the aforementioned policies, practices and/or customs, Mr. Hill suffered injuries and damages as alleged herein.

**C. Official Capacity Liability (Applicable to Director of DOC, in his official capacity).**

51. Plaintiff re-alleges and incorporates by reference each paragraph of this Complaint, as though fully set forth herein.

52. Director Steven Harpe ("Harpe") is the current Director of Oklahoma County, Oklahoma, and is sued *purely in his official capacity.* As the elected Director, Harpe is, in essence a governmental entity. A claim against a state actor in his official capacity, such as Harpe, "is essentially another way of pleading an action against the county or municipality" he

represents and is considered under the standard applicable to § 1983 claims against municipalities or counties. *Porro v. Barnes*, 624 F.3d 1322, 1328 (10th Cir. 2010). See also *Kentucky v. Graham, 473 U.S. 159, 166 (1985)* ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

53. No allegations are made against Harpe in his individual capacity. Harpe, as a representative of DOC and Oklahoma County, is liable for Mr. Hill's injuries that resulted from unconstitutional acts by DOC personnel that are affirmatively linked DOC's adoption and/or maintenance of unconstitutional policies, practices and/or omissions, including the unconstitutional policies, practices and/or omissions detailed *supra*.

54. Plaintiff Dalton Hill brings this civil rights action as Personal Representative of the Estate of his father, Jeffery Allen Hill. Mr. Hill died on January 30, 2024 after being incarcerated at Oklahoma County Detention Center ("OCDC") in Oklahoma City, Oklahoma and then transferred to St. Anthony' Hospital. He was sixty-two (62) years old. Mr. Hill's tragic and utterly unnecessary death was caused by the callous and deliberate indifference to his serious medical condition shown by medical providers and correction officers at OCDC.

55. Mr. Hill began to experience the classic signs of tooth decay, including intense jaw pain. On at least five (5) separate occasions over the course of seven days, Mr. Hill sought medical treatment from prison staff at OCDC. On each occasion, Mr. Hill complained of severe jaw pain and presented with classic symptoms of acute tooth decay. He begged for help. Prison staff refused to provide even the most basic medical treatment for Mr. Hill. Prison staff failed to give Mr. Hill a proper clinical oral examination and, when his condition dramatically worsened, failed to send him to a nearby medical facility for a tooth extraction or surgical evaluation, as required by commonly accepted medical procedure. Instead, corrections

officers and medical staff belittled Mr. Hill, and did nothing as Mr. Hill, suffering extreme pain,

rapidly deteriorated. As a result of Defendants' callously indifferent treatment, Mr. Hill died at

St. Anthony's Hospital, after suffering the excruciating agony of sepsis due to an infected tooth.

Defendants then falsified medical records to attempt to cover up their shocking misconduct.

56.  Mr. Hill's untimely and excruciating death was entirely

preventable, if only he had been provided with minimally adequate medical care. Defendants'

actions were contrary to law, contrary to sound medical practice, and contrary to the norms of a

civilized society. This complaint, arising from these tragic, outrageous, and unlawful acts, seeks

compensatory and punitive damages, costs, disbursements, and attorneys' fees pursuant to

applicable state and federal law.

## **SECOND CLAIM FOR RELIEF**

### **Cruel and Unusual Punishment in Violation of the Eighth and Fourteenth Amendments to the Constitution of the United States**

### **(Inhumane Conditions of Confinement)**

### **(42 .S.C. § 1983)**

57. Plaintiff re-alleges and incorporates by reference each paragraph of this Complaint, as though fully set forth herein.

58. This claim is asserted only against the Jailer Defendants John Does #1-#3.

59. "The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate *food*, clothing, shelter, *sanitation*, medical care, and reasonable safety from bodily harm." *Tafoya v. Salazar,* 516 F.3d 912, 916 (10th Cir. 2008) (emphasis added).

60. Mr. Hill, a detainee, was entitled to these basic humane conditions of confinement under the Fourteenth Amendment to the United States Constitution.

61. It was known and documented at the Jail that Mr. Hill was allergic to penicillin.

62. It was also well known that Mr. Hill was in a state of acute infection that was clearly visible by the amount of swelling to his face and neck.

63. It was known and documented at the Jail that Mr. Hill began requesting medical attention on January 9, 2024, and continued to request medical attention until the time of his transfer to St. Anthony's Hospital.

64. The failure, by each and all of the Jailer Defendants, to take any action to ensure that Mr. Hill was receiving medical attention for a period of many days constitutes deliberate indifference to his health and safety.

65. The Jailer Defendants failed to provide Mr. Hill with basic and humane conditions of confinement, in deliberate indifference to his health and safety and in violation of his core Constitutional rights.

66. The failure to provide humane conditions of confinement, as alleged herein, was a proximate cause of unnecessary pain and suffering, and Mr. Hill suffered damages there from..

### THIRD CLAIM FOR RELIEF

**Violation of Article II § 9 of the Constitution of the State of Oklahoma**

**Cruel and Unusual Punishment and Deliberate Indifference**

**(Against Defendant OCCJA and DOC)**

67. Plaintiff re-alleges and incorporates by reference each paragraph of this Complaint, as though fully set forth herein.

68. Article II § 9 of the Oklahoma Constitution prohibits the infliction of cruel and unusual punishment. Under the Oklahoma Constitution's Due Process Clause, Article II § 7, the right to be free from cruel and unusual punishment extends to convicted prisoners who are clearly protected under Article II § 9.

69. The Constitution of the State of Oklahoma, under Article II § 9 and Article II § 7, provides a private right of action for Mr. Hill to be free from cruel and unusual punishment, which includes protection from the denial of needed medical care while in custody and protection from inhumane conditions of confinement as alleged herein.

70. As described herein, Mr. Hill, while in the custody of OCCJA in the Oklahoma County Jail, was denied necessary medical treatment and humane conditions of confinement by each and all of the Jailer Defendants.

71. As described *supra*, these Jailer Defendants violated Mr. Hill's rights by failing to provide him with prompt and adequate medical assessment, evaluation, treatment and supervision despite the obvious need.

72. As described *supra*, these Jailer Defendants violated Mr. Hill's rights by failing to provide him with humane conditions of confinement.

73. At all times relevant, the Jailer Defendants described in this Complaint were acting within the scope of their employment and under the supervision of Jail Administrators.

74. Defendant's denial of medical care and treatment to Mr. Hill violated Article II § § 7 and 9 of the Constitution of the State of Oklahoma and was a direct and proximate cause of Mr. Hill's prolonged pain, suffering and untimely death, as well as all other damages alleged herein.

75. Defendants' denial of humane conditions of confinement to Mr. Hill violated Article II § § 7 and 9 of the Constitution of the State of Oklahoma and was a direct and proximate cause of unnecessary pain and suffering, as well as all other damages alleged herein.

76. The Oklahoma County Board of County Commissioners is vicariously liable for the violations of the Oklahoma Constitution by employees and agents acting within the scope of their employment.

## PUNITIVE DAMAGES

77. Plaintiff re-alleges and incorporates by reference each paragraph of this Complaint, as though fully set forth herein.

78. Plaintiff Hill is entitled to punitive damages on his claims brought pursuant to 42 U.S.C. § 1983 as Defendants' conduct, acts and/or omissions alleged herein constitute reckless or callous indifference to Mr. Hill's federally protected rights.

**WHEREFORE,** based on the foregoing, Plaintiff Hill prays that this Court grant him the relief sought, including, but not limited to, actual damages and compensatory damages in excess of Seventy- Five Thousand Dollars ($75,000.00), with interest accruing from he date of filing of suit, punitive damages in excess of Seventy-Five Thousand Dollars ($75,000.00), reasonable attorney fees, and all other relief deemed appropriate by this Court.

Respectfully submitted,

MICHAEL D. MCBRIDE, OBA #15627
1940 N. May Avenue
Oklahoma City, OK 73107
Telephone (405) 232-2102
Fax (405) 272-0859
*Attorney for Plaintiff*

## <u>VERIFICATION</u>

**STATE OF OKLAHOMA**

                         )

**OKLAHOMA COUNTY**       )     **Case No.**

                         )

I, Dalton Gage Hill, of lawful age, being first duly sworn upon oath, allege and state:

That I am the Plaintiff herein; and have read the above and foregoing Complaint I am completely familiar with its contents, and that the facts contained herein are true and correct to the best of my knowledge and belief.

_____
Dalton Gage Hill

Subscribed and sworn to before me this ___ day of __December__, 2024.

_____
NOTARY PUBLIC

My Commission Expires: _08/19/2027_

LINDSEY RAGLIN
NOTARY
# 19008371
EXP. 08/19/27
PUBLIC
STATE OF OKLAHOMA

**DALTON GAGE HILL**, Administrator )
And Personal Representative )
Of the Estate of Jeffery Allen Hill, deceased, )
)
        Plaintiff, )
)
v. ) Case No.
)
  (1) OKLAHOMA COUNTY )
CRIMINAL JUSTICE AUTHORITY, )
  (2) BOARD OF COUNTY )
COMMISIONERS for Oklahoma County, )
  (3) OKLAHOMA OFFICE OF )
MANAGEMENT AND ENTERPRISE )
SERVICES, )
   (4) TURN + KEY HEALTH, and )
DR. MARK WINCHESTER, and )
NURSES;  SARAH CHANCE and )
RACHEL LEVINGSTON and )
DENISE KOVACH and )
SANDI ZOSKI and )
CHRISTINA THOMPSON, )
  (5) OKLAHOMA DEPARTMENT OF )
CORRECTIONS, )
  (6) DIRECTOR STEVEN HARPE, )
  (7) DEPUTYS JOHN DOES #1-3, )
  (8) SSM HEALTH, ST. ANTHONY )
HOSPITAL – MIDTOWN )
  (9) DR. TERRY DEASON, DDS )
  (10)      BRANDI GARNER, OK )
COUNTY DETENTION CENTER JAIL )
ADMINISTRATOR, )
AND )
  (11)     OKLAHOMA COUNTY )
DETENTION CENTER, )
)
)
        Defendants. )

## AFFIDAVIT OF MERIT

    I, Michael D. McBride, an attorney duly admitted to practice in the courts of the State of Oklahoma, declare under penalty of perjury:

1. I am a member of McBride Law Firm.  I have been practicing law for over thirty (30) years.

2. I represent Plaintiff Dalton Hill on behalf of his deceased father in Jeffery Hill in this case.  Mr. Hill died at St. Anthony Hospital after being transferred from Oklahoma

County Detention Center ("OCDC") in January 2024 from an abscessed tooth that OCDC staff ignored and failed to treat.

3. In accordance with 51 Okla. Stat. § 19.1, if applicable and enforceable, The Chief Medical Examiner with expertise in providing medical opinions about people who are deceased reviewed Mr. Hill's OCDC/Turn Key medical records.

4. The medical expert provided Plaintiff with a written opinion determining that, based on her medical qualifications, her years of experience, including treating decedents from jail facilities, and her review of the medical records from OCDC, a reasonable interpretation of the facts supports a finding that the acts and omissions of the Defendants in this case constituted, at the very minimum, negligence and most probably a deliberate indifference to provide adequate medical care.

5. On the basis of her review, the medical expert concluded and Plaintiff agrees that Plaintiff's claim is meritorious and based on good cause.

Respectfully submitted,

MICHAEL D. MCBRIDE, OBA #15627
1940 N. May Avenue
Oklahoma City, OK 73107
Telephone (405) 232-2102
Fax (405) 272-0859
*Attorney for Plaintiff*