IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

DALTON GAGE HILL, as Personal )
Representative of the Estate of )
Jeffery Allen Hill, Deceased, )
                                      )
        Plaintiff, )
                                      )
v. ) Case No. CIV-24-1298-D
                                      )
OKLAHOMA COUNTY CRIMINAL )
JUSTICE AUTHORITY, et al., )
                                      )
        Defendants. )

## **ORDER**

Plaintiff brought this civil rights action under 42 U.S.C. § 1983, alleging violations of Jeffery Allen Hill's constitutional rights [Am. Compl, Doc. No. 53]. Plaintiff filed suit against several defendants, to include Turn Key Health Clinics, LLC, d/b/a TK Health (Turn Key). Turn Key filed a Motion to Dismiss [Doc. No. 66], to which Plaintiff responded [Doc. No. 94], and Turn Key replied [Doc. No. 104]. The matter was referred to United States Magistrate Judge Suzanne Mitchell for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C).

On July 11, 2025, the magistrate judge issued a Report and Recommendation [Doc. No. 119], in which she recommends that Turn Key's Motion to Dismiss [Doc. No. 66] be granted. In her report, the magistrate judge provided the following factual background from Plaintiff's Amended Complaint [Doc. No. 53]:

> Mr. Hill pleaded guilty in Oklahoma County District Court to leaving the scene of a fatal accident and driving a vehicle without a valid driver's license, Doc. 53, at 6. In January 2024, the state district court sentenced him to a term of life in the Oklahoma

1

> Department of Corrections, but he remained housed at the Oklahoma County Detention Center after his plea. *Id.*
>
> From January 9th through the 13th, Mr. Hill had notified two separate John Doe Deputies about his 'severe toothache' pain. *Id.* 'John Doe #2 … relayed the information to [Defendant] Logan' 'on January 12, 2024, and January 13, 2024.' *Id.* On January 18th, Mr. Hill complained to jail medical staff about the pain in his 'back right wisdom tooth.' *Id.* That day, Nurses Rachel Levingston and/or Christy Thompson scheduled Mr. Hill to see a dentist on January 19, but the dentist was not in that day. *Id.*
>
> 'On January 18, 2024, Dr. Winchester rescheduled the dental appointment after Mr. Hill complained of wisdom tooth pain.' *Id.* Dr. Winchester prescribed five hundred milligrams of penicillin to be taken 'twice daily for ten (10) days' with one refill for Mr. Hill's complaints of wisdom tooth pain. *Id.* Mr. Hill's medical file showed he was allergic to penicillin. *Id.* at 8.
>
> On January 19, Mr. Hill called his son and complained about his tooth pain. *Id.* at 6. Mr. Hill also voiced his complaint to Deputy John Doe #2. *Id.* Mr. Hill was 'moaning and grumbling to himself' for days in his cell and 'stopped eating food' for 'at least a week before his death.' *Id.* at 7.
>
> Three days later, 'Mr. Hill was found in severe pain and unresponsive by a detention officer in his cell.' *Id.* at 6. EMSA then transferred him to St. Anthony's Hospital. *Id.*
>
> The next day, Mr. Hill had emergency surgery and was 'placed on a ventilator through a tracheotomy.' *Id.* Nurse Denise Kovach reported Mr. Hill could not swallow because of swelling of his neck and mouth. *Id.*
>
> Terry Deason, DDS, examined Mr. Hill, noted his severe reaction to penicillin, and noted Mr. Hill 'had to be hospitalized and while there, had his wisdom tooth removed.' *Id.* at 7. No one had extracted Mr. Hill's tooth, however. *Id.*
>
> On January 29, Mr. Hill became septic with multi-organ failure, and died the following day. *Id.*

[Doc. No. 119, at 2-3].

2

To state a § 1983 claim against Turn Key—Plaintiff needs to allege (1) the existence of a Turn Key policy or custom, (2) a direct causal link between Turn Key's policy or custom and a constitutional injury, and (3) that Turn Key acted with deliberate indifference. *See Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1049 (10th Cir. 2022).[1] In recommending that Turn Key's motion to dismiss be granted, the magistrate judge determined that Plaintiff's Amended Complaint did not sufficiently allege the existence of a Turn Key policy or custom, or that any Turn Key staff acted pursuant to any unconstitutional policy [Doc. No. 119, at 7-8]. The magistrate judge further concluded that Plaintiff had not raised state-law tort claims or claims under the Oklahoma Constitution against Turn Key. *Id.* at 9-11.

Plaintiff timely filed an Objection [Doc. No. 124]. First, Plaintiff maintains that his allegations that Turn Key has a policy "to treat detainees at the jail when a transfer to a medical facility is proper and necessary," and that "Turn Key has followed this custom of not referring certain cases out to urgent care facilities" support a finding of municipal liability under 42 U.S.C. § 1983. *Id.* at 7. However, as noted by the magistrate judge, other than alleging that Mr. Hill was not transferred to the hospital until four days after his first complaint of tooth pain, "Plaintiff provides no facts in support of [these] conclusory statement[s]." *Id.* Upon review of Plaintiff's Amended Complaint [Doc. No. 53], the Court agrees with the magistrate judge that Plaintiff's allegations of Turn Key's "policy" are conclusory and do not state a plausible § 1983 claim against Turn Key.

---

[1] Municipal liability—or *Monell* liability—for § 1983 claims has been extended to "private entities acting under color of state law," such as medical contractors. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 n.13 (10th Cir. 2003); *see also Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

3

Even had Plaintiff plausibly alleged a policy by Turn Key, the magistrate judge further determined that Plaintiff had failed to allege that Turn Key staff acted according to any unconstitutional policy as opposed to their own medical judgment. *See Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1143 (10th Cir. 2023) ("[T]he complaint paints a picture that Dr. Myers acted inexplicably and on his own in the face of [the decedent]'s concerning and worsening symptoms."). In his Objection, Plaintiff contends that "[t]he repeated failure to address Mr. Hill's complaints, the administration of contraindicated medicine, and the failure to extract an infected tooth" demonstrate Turn Key's deliberate indifference [Doc. No. 124, at 3]. Again, however, this is insufficient to allege the required "direct causal link" between a Turn Key policy or custom and a constitutional injury for purposes of alleging municipal liability.

Plaintiff argues that his "allegations of a repeated pattern of denying or delaying medical care to inmates or detainees" support the "inference of a de facto policy of deliberate indifference," but Plaintiff misses the mark. "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (citation omitted). And "[i]n most instances, notice can be established by proving the existence of a pattern of tortious conduct." *Waller*, 932 F.3d at 1284 (citation omitted). However, Plaintiff merely alleges in his Amended Complaint that he believed Turn Key had a policy "to treat detainees at the jail when a transfer to a medical facility is proper and necessary" and that "Turn Key has

4

followed this custom of not referring certain cases out to urgent care facilities[.]" [Doc. No. 53, at 13]. Again, these conclusory statements are insufficient to allege that Turn Key acted with deliberate indifference to a known or obvious risk of harm.[2]

Next, Plaintiff disagrees with the magistrate judge's conclusion that Plaintiff failed to raise state-law tort claims against Turn Key [Doc. No. 124, at 7]. Plaintiff asserts that, despite his failure to allege any state-law tort claims in his complaint, his claim for relief under § 1983 "was sufficient to support a claim for State-Law Negligence" against Turn Key. *Id.* Upon review of the Amended Complaint [Doc. No. 53], the Court agrees with the magistrate judge's finding that Plaintiff's Amended Complaint does not assert negligence or state-law tort claims against Turn Key.

Finally, Plaintiff objects to the magistrate judge's conclusion that Plaintiff does not allege claims under the Oklahoma Constitution against Turn Key. In his Objection, Plaintiff argues that "[t]he constitutional violations [alleged in the Amended Complaint] were not limited to the actions of governmental Defendants." [Doc. No. 124, at 6]. Yet, in his Amended Complaint, Plaintiff explicitly limits his claims under the Oklahoma Constitution to "Defendant[s] OCCJA and DOC." [Doc. No. 53, at 12]. In his Objection,

---

[2] The Court suspects that Plaintiff's disjointed analysis may be the result of Plaintiff's counsel's reliance on AI. For one example, Plaintiff cites to *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022 (10th Cir. 2020), explaining the *Quintana* case as involving "jail officials [who] denied treatment **to a pregnant woman in distress**." [Doc. No. 124, at 3] (emphasis supplied). However, the *Quintana* case involved a male inmate who died after suffering from heroine withdrawals. *Quintana*, 973 F.3d at 1027. Plaintiff's counsel's misuse of AI was the subject of a previous show-cause hearing and a resulting recommendation from the magistrate judge that the Court impose monetary sanctions on Plaintiff's counsel [Doc. Nos. 133, 134]. Because Plaintiff filed the present Objection prior to the show-cause hearing, the Court will not impose additional sanctions. However, Plaintiff's counsel will not receive any further warnings or lenience on the issue of AI misuse.

Plaintiff attempts to allege that Turn Key violated the Oklahoma Constitution, but these allegations do not appear in his Amended Complaint. To the extent Plaintiff attempts to introduce new arguments in his Objection, the Court notes that "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996). Accordingly, the Court agrees with the magistrate judge's determination that Plaintiff failed to allege violations of the Oklahoma Constitution against Turn Key.

For these reasons, the Court **ADOPTS** the Report and Recommendation [Doc. No. 119] in its entirety, and Turn Key's Motion to Dismiss [Doc. No. 66] is **GRANTED**. Plaintiff's claims against Turn Key are **DISMISSED WITHOUT PREJUDICE**, but without leave to amend.[3]

**IT IS SO ORDERED** this 28th day of October, 2025.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

[3] "Where a plaintiff does not move for permission to amend the complaint, the district court commits no error by not granting such leave." *Burnett v. Mortg. Elec. Regis. Sys., Inc.*, 706 F.3d 1231, 1238 n.4 (10th Cir. 2013). A district court may properly require a plaintiff to file a motion that complies with FED. R. CIV. P. 15(a) and LCvR15.1 before considering whether to allow an amendment. *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021); *see also Hall v. Witteman*, 584 F.3d 859, 868 (10th Cir. 2009) (finding that plaintiff "must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment").