IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DALTON GAGE HILL, Administrator and Personal Representative of the Estate of Jeffery Allen Hill, deceased,<br><br>      Plaintiff,<br><br>v.<br><br>OKLAHOMA COUNTY CRIMINAL JUSTICE AUTHORITY, et al.,<br><br>      Defendants. | Case No. CIV-24-1298-D |

## ORDER

Plaintiff brought this civil rights action under 42 U.S.C. § 1983, alleging violations of Jeffery Allen Hill's constitutional rights [Am. Compl., Doc. No. 53]. Plaintiff filed suit against several defendants, to include the Oklahoma County Criminal Justice Authority (OCCJA) and Brandi Garner (Garner). Defendants OCCJA and Garner filed a joint Motion to Dismiss [Doc. No. 55]. Plaintiff's response [Doc. No. 73] was stricken as untimely [Doc. No. 76]. The magistrate judge issued a show-cause Order [Doc. No. 75], directing Plaintiff to show cause why Defendants' motion to dismiss should not be deemed confessed based on Plaintiff's lack of response.

Following Plaintiff's response [Doc. No. 77], the magistrate judge ordered Plaintiff to respond to Defendants' motion on or before May 21, 2025 [Doc. No. 86], which Plaintiff failed to do. The magistrate judge then issued a Report and Recommendation [Doc. No. 98], recommending that the Court deem as confessed OCCJA and Garner's motion and dismiss Plaintiff's claims against those defendants. The Court adopted in part the

1

magistrate judge's report, agreeing that Plaintiff should not be permitted to file a response to the motion to dismiss, but re-referring the motion to the magistrate judge for consideration on the merits [Doc. No. 109].

Thereafter, the magistrate judge issued a subsequent Report and Recommendation [Doc. No. 130], in which she recommends that OCCJA and Garner's Motion to Dismiss [Doc. No. 55] be granted. In her report, the magistrate judge provided the following factual background from Plaintiff's Amended Complaint [Doc. No. 53]:

> Mr. Hill pleaded guilty in Oklahoma County District Court to leaving the scene of a fatal accident and driving a vehicle without a valid driver's license, Doc. 53, at 6. In January 2024, the state district court sentenced him to a term of life in the Oklahoma Department of Corrections, but he remained housed at the Oklahoma County Detention Center after his plea. *Id.*
>
> From January 9th through the 13th, Mr. Hill had notified two separate John Doe Deputies about his 'severe toothache' pain. *Id.* 'John Doe #2 … relayed the information to [Defendant] Logan' 'on January 12, 2024, and January 13, 2024.' *Id.* On January 18th, Mr. Hill complained to jail medical staff about the pain in his 'back right wisdom tooth.' *Id.* That day, Nurses Rachel Levingston and/or Christy Thompson scheduled Mr. Hill to see a dentist on January 19, but the dentist was not in that day. *Id.*
>
> 'On January 18, 2024, Dr. Winchester rescheduled the dental appointment after Mr. Hill complained of wisdom tooth pain.' *Id.* Dr. Winchester prescribed five hundred milligrams of penicillin to be taken 'twice daily for ten (10) days' with one refill for Mr. Hill's complaints of wisdom tooth pain. *Id.* Mr. Hill's medical file showed he was allergic to penicillin. *Id.* at 8.
>
> On January 19, Mr. Hill called his son and complained about his tooth pain. *Id.* at 6. Mr. Hill also voiced his complaint to Deputy John Doe #2. *Id.* Mr. Hill was 'moaning and grumbling to himself' for days in his cell and 'stopped eating food' for 'at least a week before his death.' *Id.* at 7.
>
> Three days later, 'Mr. Hill was found in severe pain and

2

> unresponsive by a detention officer in his cell.' *Id.* at 6. EMSA then transferred him to St. Anthony's Hospital. *Id.*
>
> The next day, Mr. Hill had emergency surgery and was 'placed on a ventilator through a tracheotomy.' *Id.* Nurse Denise Kovach reported Mr. Hill could not swallow because of swelling of his neck and mouth. *Id.*
>
> Terry Deason, DDS, examined Mr. Hill, noted his severe reaction to penicillin, and noted Mr. Hill 'had to be hospitalized and while there, had his wisdom tooth removed.' *Id.* at 7. No one had extracted Mr. Hill's tooth, however. *Id.*
>
> On January 29, Mr. Hill became septic with multi-organ failure, and died the following day. *Id.*

[Doc. No. 130, at 2-3].

To state a § 1983 claim of municipal liability against OCCJA, Plaintiff must allege (1) the existence of a policy or custom, (2) a direct causal link between the policy or custom and a constitutional injury, and (3) that the municipality acted with deliberate indifference. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Prince v. Sheriff of Carter Cnty.*, 28 F.4th 1033, 1049 (10th Cir. 2022). In recommending that OCCJA and Garner's[1] motion to dismiss be granted, the magistrate judge determined that Plaintiff's Amended Complaint did not sufficiently allege the existence of an OCCJA policy or custom, or that any OCCJA policy was causally linked to violations of Mr. Hill's constitutional rights. [Doc. No. 130, at 10-11]. The magistrate judge further concluded that Plaintiff had not raised claims under the Oklahoma Constitution against OCCJA and Garner. *Id.* at 12.

---

[1] In her report, the magistrate judge notes Plaintiff's representation that he is suing Garner "purely in her official capacity" as "Jail Administrator," claiming that "in suing the Jail Administrator in her official capacity, [he] has brought suit against the [OCCJA]." [Doc. No. 130, at 6] (quoting Doc. No. 53, at 2).

3

Plaintiff timely filed an Objection [Doc. No. 136]. First, Plaintiff maintains that he has sufficiently identified a policy or custom in that Plaintiff's allegations "resulted from inadequate staffing, a lack of medical supervision, and deliberate indifference on the part of jail officials and medical staff." [Doc. No. 136, at 4]. However, as explained by the magistrate judge, Plaintiff's conclusory statements are insufficient to allege the existence of an OCCJA policy. "A challenged practice may be deemed an official policy or custom for § 1983 municipal-liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013).

In his Amended Complaint, Plaintiff alleges that "[t]o the extent there was any medical delivery system at the Jail, it was completely inadequate, and virtually nonexistent"; that "[o]n information and belief, OCCJA had inadequate written policies governing inmate health care, and to the extent any such written policies existed they were neither followed nor enforced"; and that "[a]s a matter of policy and/or custom, inmates at the Jail were not provided with appropriate or adequate medical assessments[,] medical treatment plans[,] mental health assessments or evaluations[,] monitoring of medical or mental health[,] access to mental health or medical personnel capable of and willing to properly evaluate and treat serious mental health or medical needs[,] emergent mental health care[,] and/or precautionary measures to prevent injury." [Doc. No. 53, at 8-9]. Plaintiff also alleges that OCCJA's policies included "[s]evere limitation of the use of off-site medical and diagnostic service providers, even in emergent situations"; "nonexistent

mental health and/or medical assessments, examinations and treatment"; understaffing; "nonexistent or inadequate training regarding health care"; "fostering an atmosphere and a system of indifference to the serious health and medical needs of inmates like Mr. Hill"; and "utterly inadequate mental health and/or medical supervision of staff and inmates." *Id.* at 9-10.

Upon consideration, the Court agrees with the magistrate judge that Plaintiff has not alleged a formal policy of OCCJA. Although Plaintiff references "inadequate written policies," Plaintiff "never provides any details about what these allegedly 'inadequate written policies' are." [Doc. No. 130, at 10]. And, although a municipality "may also be held liable if the [challenged] practice is 'so permanent and well settled as to constitute a "custom or usage" with the force of law,'" the Court also agrees with the magistrate judge that Plaintiff's Amended Complaint does not sufficiently allege that the conduct was "continuing, persistent and widespread." *See Hovind v. Cane*, No. 19-605-D, 2019 WL 6219543, at *4 (W.D. Okla. Nov. 21, 2019) (citation omitted); *see also Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1041 (10th Cir. 1993).

As noted by the magistrate judge, "[g]enerally, allegations of an isolated incident are not sufficient to show the existence of a custom or policy." *Turlington v. Connor*, No. 21-CV-0142-CVE-CDL, 2021 WL 6051067, at *7 (N.D. Okla. Dec. 21, 2021) (internal quotations and citation omitted). Rather, "[i]n attempting to prove the existence of such a 'continuing, persistent and widespread' custom, plaintiffs most commonly offer evidence suggesting that similarly situated individuals were mistreated by the municipality in a similar way." *Carney v. City and Cnty. of Denver*, 534 F.3d 1269, 1274 (10th Cir. 2008);

5

*see also Randle v. City of Aurora*, 69 F.3d 441, 447 (10th Cir. 1995) ("[The plaintiff's] failure to allege the existence of similar discrimination as to others seriously undermines her claim that the City maintained a custom of discriminatory personnel practices."); *see also Waller v. City and Cnty. of Denver*, 932 F.3d 1277, 1290 (10th Cir. 2019) (citation omitted) ("Mr. Waller's allegations—describing only one similar incident of excessive force prior to his own injuries—fall far short of plausibly alleging a 'widespread practice' of excessive force, much less a practice 'so permanent and well settled as to constitute a custom or usage with the force of law.'").

The Court agrees with the magistrate judge that Plaintiff's Amended Complaint is lacking in factual allegations pertaining to the widespread or persistent nature of the conduct alleged therein. Without alleging examples of OCCJA subjecting other similarly situated inmates to the conduct alleged in the amended complaint, Plaintiff's assertion that OCCJA's alleged failures constitute "continuing, persistent and widespread" conduct are conclusory. For these reasons, the Court finds that Plaintiff's Amended Complaint fails to show the existence of a policy or custom as required for *Monell* liability.

The magistrate judge further concluded that Plaintiff cannot maintain a state constitutional claim against OCCJA and Garner. In his Amended Complaint, Plaintiff states that the Oklahoma Constitution "provides a private right of action for Mr. Hill to be free from cruel and unusual punishment, which includes protection from the denial of needed medical care." [Doc. No. 53, at 12]. In her recommendation, the magistrate judge relied on *Barrios v. Haskell Cnty. Pub. Facilities Auth.*, in which the Oklahoma Supreme Court provided that "Sections 7 and 9 of Article II of the Oklahoma Constitution do not

6

allow an inmate to bring a tort claim for denial of medical care." 432 P.3d 233, 241 (Okla. 2018). The magistrate judge further noted that the Oklahoma Governmental Tort Claims Act bars constitutional torts arising out of the "operation or maintenance of any prison, jail or correctional facility." [Doc. No. 130, at 13] (citing *Barrios*, 432 P.3d at 239); *see also* Okla Stat. tit. 51, § 155 ("The state or a political subdivision shall not be liable if a loss or claim results from … [the] operation or maintenance of any prison, jail or correctional facility[.]"). Although Plaintiff maintains that "[t]he Report and Recommendation improperly relies on *Barrios*," he articulates no support for this claim and merely maintains that his state constitutional claim against OCCJA and Garner should not be dismissed [Doc. No. 136, at 5]. The Court agrees with the magistrate judge that Plaintiff's state-law claims are barred by the GTCA's immunity for claims resulting from jail operations and that these claims should be dismissed without prejudice.

For these reasons, the Court **ADOPTS** the Report and Recommendation [Doc. No. 130] in its entirety, and Defendants OCCJA and Garner's Motion to Dismiss [Doc. No. 55] is **GRANTED**. Plaintiff's claims against OCCJA and Garner are **DISMISSED WITHOUT PREJUDICE**, but without leave to amend at this time.[2]

---

[2] "Where a plaintiff does not move for permission to amend the complaint, the district court commits no error by not granting such leave." *Burnett v. Mortg. Elec. Regis. Sys., Inc.*, 706 F.3d 1231, 1238 n.4 (10th Cir. 2013). A district court may properly require a plaintiff to file a motion that complies with FED. R. CIV. P. 15(a) and LCvR15.1 before considering whether to allow an amendment. *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021); *see also Hall v. Witteman*, 584 F.3d 859, 868 (10th Cir. 2009) (finding that plaintiff "must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment").

**IT IS SO ORDERED** this 9th day of January, 2026.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge