**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **DALTON GAGE HILL, Administrator and Personal Representative of THE ESTATE OF JEFFREY ALLEN HILL, Deceased** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. CIV-24-1298-D** |
| **OKLAHOMA COUNTY CRIMINAL JUSTICE AUTHORITY, et al.,** | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION**

On January 30, 2024, Decedent Jeffrey Allen Hill died while at the SSM Health St. Anthony Hospital following complications from an infected tooth. The administrator and personal representative of Hill's estate brought this action under 42 U.S.C. § 1983, alleging that Defendant Major Bradley Logan deprived Hill of constitutionally adequate medical care in violation of the Eighth Amendment. Doc. 53, at 9–10.[1] United States District Judge Timothy D. DeGiusti referred this matter to the undersigned Magistrate Judge for

---

[1] Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). Doc. 58. Before the Court is Defendant Logan's Motion for Summary Judgment, Doc. 182. Plaintiff filed a response in opposition, Docs. 186 & 187, and Defendant Logan has replied. Doc. 189. So the matter is at issue. The undersigned recommends the Court grant Defendant Logan's motion for summary judgment.

## I. Legal standards.

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim." *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016) (internal quotation marks and citation omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) (explaining that a dispute over a material fact is genuine "if a rational jury could find in favor of the nonmoving party on the evidence presented" (quoting *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015))). In applying this standard, the Court "'review[s] the facts and all reasonable inferences those facts

support[ ] in the light most favorable to the nonmoving party.'" *Doe*, 952 F.3d at 1189 (second alteration in original) (quoting *Evans v. Sandy City*, 944 F.3d 847, 852 (10th Cir. 2019)). "In reviewing the facts, at summary judgment, the party who bears a burden of proof on an issue bears the burden of production rather than the burden of persuasion." *Markley v. U.S. Bank Nat'l Ass'n*, 59 F.4th 1072, 1080 (10th Cir. 2023).

## II. Background.

This case presents yet another tragic death at an Oklahoma county jail. During the relevant dates, the Oklahoma County Detention Center (OCDC) employed Defendant Logan as a Major. He testified his job was to oversee the OCDC's captains to make sure they "were doing the job that they were supposed to be doing." Doc. 182, Ex. 1, at 2. Defendant Logan worked at the OCDC for over twenty years. *Id.* at 8.

Decedent entered OCDC on November 15, 2023. Doc. 53, at 6; Doc. 186, at 19. In the weeks following Decedent's January 5, 2024 sentencing, he developed a severe toothache and complained to OCDC personnel about it. Doc. 53, at 6; Doc. 186, at 17-18.[2] On January 22, 2024, he was transported to St.

---

[2] The Amended Complaint, Doc. 53, and Plaintiff's Response to Defendant Logan's Motion for Summary Judgment, Doc. 186, differ regarding the timeline

Anthony's Hospital and he died on January 30, 2024, after developing sepsis from his infected tooth. Doc. 53, at 6-7; Doc. 186, at 19-21.[3]

## III. Analysis.

### A. Defendant Logan's qualified immunity defense.

Defendant Logan raises the defense of qualified immunity. Doc. 182, at 9. Qualified immunity is an affirmative defense that "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). Defendant Logan argues that he is entitled to qualified immunity because he did not violate Decedent's constitutional rights. Doc. 182, at 11-12.

---

of events between Decedent's initial complaints of toothache and his transfer to St. Anthony's Hospital. The details are not important for purposes of this Report and Recommendation.

[3] Included here are those material facts supported by the record and not genuinely disputed in the manner required by Fed. R. Civ. P. 56(c). To the extent either party has made unsubstantiated allegations, general and conclusory statements, or require "one inference too many to adequately support the assertion" made, such matters have not been included. *See generally Double Eagle Alloys, Inc. v. Hooper*, 134 F.4th 1078, 1087, 1100 n.21 (10th Cir. 2025).

While Plaintiff insists that genuine issues of material fact exist "concerning Defendant Logan's authority, personal participation, knowledge, deliberate indifference, causation, and qualified immunity," he does not address Defendant Logan's claim to qualified immunity apart from that fleeting reference. Doc. 186, at 25. Once properly asserted, the defense of qualified immunity "creates a presumption that the defendant is immune from suit." *Crowson v. Washington County*, 983 F.3d 1166, 1178 (10th Cir. 2020) (quotation marks and brackets omitted). To overcome the presumption, Plaintiff "must show that (1) the officers' alleged conduct violated a constitutional right, and (2) it was clearly established at the time of the violation… that such conduct constituted a violation of that right." *Id.* Plaintiff has not made this showing. Without any rebuttal from Plaintiff, the Court must presume that Defendant Logan is entitled to qualified immunity. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) ("[A]lthough we will review the evidence in the light most favorable to the nonmoving party, the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.") (internal citation omitted).

**B. Defendant Logan is entitled to judgment on the merits.**

Even if Defendant Logan were not entitled to qualified immunity, Plaintiffs have failed to show that he violated Decedent's constitutional rights.

### 1. Deliberate indifference standard.

To recover under § 1983, a plaintiff must establish that a person acting under color of state law "violated his constitutional or statutory rights." *Dodds v. Richardson*, 614 F.3d 1185, 1194 (10th Cir. 2010). "[A] prison official's deliberate indifference to a convicted prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment." *Prince v. Sheriff,* 28 F.4th 1033, 1043 (10th Cir. 2022).

Deliberate indifference has two components: (1) "an objective component requiring that the pain or deprivation be sufficiently serious," and (2) "a subjective component requiring that the offending officials act with a sufficiently culpable state of mind." *Miller v. Glanz*, 948 F.2d 1562, 1569 (10th Cir. 1991). "In other words, the focus of the objective component is the seriousness of the plaintiff's alleged harm, while the focus of the subjective component is the mental state of the defendant with respect to the risk of that harm." *Prince*, 28 F.4th at 1044.

The objective component is met if the deprivation is "sufficiently serious." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "A medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Id.* (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). The objective component must be evaluated by the actual harm suffered, not by symptoms perceived by the defendant. *See Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005) (stating that symptoms displayed are only relevant to the subjective component of the deliberate indifference test).

The subjective component is met if a prison official "knows of and disregards an excessive risk to inmate health or safety," meaning "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and []he must also draw the inference." *Id.* at 751 (quoting *Farmer*, 511 U.S. at 837). It "can be satisfied under two theories: failure to properly treat a serious medical condition ('failure to properly treat theory') or as a gatekeeper who prevents an inmate from receiving treatment or denies access to someone capable of evaluating the inmate's need for treatment ('gatekeeper theory')." *Lucas v. Turn Key Health*

*Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (citing *Sealock*, 218 F.3d at 1211).

### 2. Plaintiff's allegations do not amount to deliberate indifference.

Plaintiff sues Defendant Logan in his individual capacity, Doc. 53, at 5, alleging deliberate indifference for failure to provide adequate medical care. *Id.* at 9. Because Defendant Logan is not a medical professional, the Court proceeds under the gatekeeper theory. *See* Doc. 139, at 9 ("[T]he undersigned reads Plaintiff's amended complaint as stating a claim against Defendant Logan under the gatekeeper theory.").

The objective component is met here. "An inmate's death meets [the objective] requirement 'without doubt.'" *Burke v. Regalado*, 935 F.3d 960, 994 (10th Cir. 2019). Defendant Logan claims that there was not "a sufficiently serious observable medical need observed by Major Logan," but the standard for the objective component is the harm to the plaintiff, not the observations of the defendant. Doc. 182, at 7; *Mata*, 427 F.3d at 753. So, the remaining issue is whether the subjective component is met with regard to Defendant Logan.

In his complaint, Plaintiff alleged that Defendant Logan "had personal knowledge that Mr. Hill was not receiving proper medical treatment, was not eating, was immobile, and . . . in severe pain," but "failed to ensure that Mr.

Hill received the medical care he . . . obviously and desperately needed." Doc. 53, at 7. He maintained that on January 12 and 13, 2024, Decedent "complained about his pain to John Doe #1 and John Doe #2 who relayed the information to [Defendant] Logan who in turn did nothing to assist [Decedent]." *Id.* at 6. He asserted that Defendant Logan failed to provide Mr. Hill "with prompt and adequate medical assessment, evaluation, treatment and supervision despite the obvious need." *Id.* at 12. He alleged that as a "Jailer Defendant," Defendant Logan acted with "deliberate indifference to his health and safety" which "was a proximate cause of [his] unnecessary pain and suffering, and . . . untimely death." *Id.*

At the motion to dismiss stage, the Court held that these allegations sufficed to state a claim for which relief could be granted. Doc. 139 (Report and Recommendation recommending denial of Defendant Logan's motion to dismiss); Doc. 150 (Order adopting Doc. 139). The Court found that "the allegations of Plaintiff's Amended Complaint—taken as true—sufficiently allege[d] that Defendant Logan had personal knowledge of Mr. Hill's serious medical needs." Doc. 150, at 4. Further, the Court found that Defendant Logan had failed to adequately raise the defense of qualified immunity and thus denied Defendant Logan's motion to dismiss. Doc. 139; Doc. 150.

But at summary judgment, the Court can no longer accept Plaintiff's allegations on faith. Plaintiff must provide some evidence to support his account of events. Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact… is genuinely disputed must support the assertion by citing to particular parts of materials in the record…"); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment… against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). He has not done so.

Defendant Logan states he had "no role in the medical care and no direct role, only a remote supervisory role, in security oversight of the deceased." Doc. 182, at 1. He states his "first and only involvement with [Decedent] was when he fortuitously happened upon [him] at an exit on a gurney as he was being transferred to an ambulance for transport to the hospital." *Id.* (citing Ex. 1, at 32). Defendant Logan claims he "did not know before this that Decedent was sick, that he needed a transfer, or about his medical diagnosis," and that he "never had an opportunity to observe [Decedent] prior to the transfer to the hospital." *Id.* at 2, 8.

Plaintiff disputes this account as Defendant Logan's first and only involvement. Doc. 186, at 13. He cites no record evidence to support this allegation. Rather, he points to Defendant Logan's "affirmative actions *after* this encounter, including [Defendant Logan's] researching release options and communicating with [the Department of Corrections (DOC)], and efforts to 'transfer' custody while Decedent was already admitted to the hospital." Doc. 186, at 13 (emphasis added). Plaintiff argues that Defendant Logan's researching of a Medical Own Recognizance release and his continued conversations with DOC to "pursue the transfer of custody [of Decedent] to DOC" were "indicative of personal, historical knowledge of Decedent's serious medical condition[.]" *Id.* at 6-7. These events undisputably occurred after his encounter with Decedent and after Decedent was transferred to the hospital, and they do not show any prior knowledge on Defendant Logan's part.

Plaintiff, in his response, abandons all allegations of John Doe jail staff reporting Decedent's condition to Defendant Logan. Doc. 53, at 6, 7 (complaint alleges "Mr. Hill told Deputy John Doe #2 who relayed the information to Major Logan"); Doc. 186. Instead, Plaintiff relies entirely on Defendant Logan's "supervisory" position to prove knowledge of Decedent's condition. *See, e.g.*, Doc. 186, at 8. Plaintiff does not support his allegations with record evidence

in response to the motion for summary judgment. And the mere fact that Defendant Logan supervised jail staff is not adequate to show his personal involvement in a constitutional violation. *See Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) ("Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation.").

Defendant Logan testified that when he heard Decedent was being hospitalized for his tooth he thought "[t]hat got to be a bad tooth." Doc. 182, Ex. 1, at 4. Then Defendant Logan "went out and looked him up. And that's when [he] saw he was sentenced to DOC" and Defendant Logan decided to "see if we can get him transferred to DOC custody physically." *Id.* He did not "look and see" Decedent's previous medical requests. *Id.* And Plaintiff points to no evidence, apart from his managerial duties over the captains at OCDC, that Defendant Logan had any knowledge of any calls from Decedent's family members to OCDC. Plaintiff alleges that Defendant Logan oversaw all operations within the jail. Doc. 186, at 24 (citing Ex. 9, at 54-56). He also "oversaw all captains and communications with [Turn Key Health Care], which was contracted with OCDC to provide inmate healthcare during the relevant time." *Id*. Plaintiff identifies no record evidence showing that Defendant Logan received, reviewed, or otherwise learned of Decedent's medical requests,

reported symptoms, treatment history, or communications from Decedent's family before Decedent's transfer to the hospital. The same applies for Defendant Logan's knowledge about Decedent's condition or the treatment he received before and after he departed OCDC. Plaintiff's conclusory statements do not meet the subjective component.

The parties contest whether Decedent was in DOC's custody. Doc. 186, at 4-6; Doc. 182, Ex. 3 (citing Ex. 4 DOC Custody). Plaintiff points to the January 31, 2024 hearing set before Oklahoma County Judge Truong to consider Decedent's motion to withdraw his plea in support of his contention that Decedent remained in OCDC custody. Doc. 186, at 6-7, 15-16, 21. And Defendant insists that the St. Anthony Hospital records that state "DOC Custody" establish that Decedent was no longer in OCDC custody, without offering any DOC policy or paperwork establishing the transfer. Doc. 182, at 3. For purposes of the present motion, the Court need not resolve which entity retained legal custody of Decedent after his transfer to the hospital because that dispute does not create a genuine issue regarding Defendant Logan's knowledge of Decedent's medical condition before the transfer.

Plaintiff's conclusory statements do not amount to showing that Defendant Logan acted with deliberate indifference toward Decedent's serious

medical needs. Seeking a transfer of custody for Decedent, who was amidst transport to the hospital, did not violate a constitutional right. Moreover, it did not occur until after the alleged deprivation of medical care. Plaintiff identifies no other action or inaction to show Decedent's knowing disregard of an excessive risk. The undersigned does not agree that there is any "evidence demonstrat[ing] that Defendant Logan's behavior" showed his "personal, historical knowledge of Decedent's medical condition and inability to receive treatment at the hands of Defendants." Doc. 186, at 6.

**C. Plaintiff's other arguments.**

Counsel for Plaintiff accuses opposing counsel of "extrajudicial coercion, statutory blackmail, and systemic client harassment to forcefully attempt to purge the record of evidence fatal to" his client's defense. *Id*. at 26; *see id.* at 9-12. Such accusations are not taken lightly and should not be part of a responsive pleading. Defense counsel's rehashing Plaintiff's counsel's personal struggles and any repercussions on his legal career are also unnecessary. Neither Defendant Winchester's nor Plaintiff's counsel's personal histories are relevant to summary judgment on Plaintiff's claim of deliberate indifference against Defendant Logan. This Court expects professional and civil behavior from all practitioners, particularly those who have been practicing before this

Court for many years. Counsel are reminded that filings must remain professional and directed to relevant legal and factual issues. The Court does not countenance such behavior and counsel for all parties are on notice that further ad hominem attacks will result in the Court's striking the pleading(s) in their entirety.

## IV. Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court grant Defendant Logan's motion for summary judgment. Doc. 182.

The undersigned advises the parties of their right to file an objection to this report and recommendation with the Clerk of this Court on or before October 22, 2026, in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2). The undersigned further advises the parties that failure to make a timely objection to this report and recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation does not terminate the referral to the undersigned Magistrate Judge in this matter.

**ENTERED** this 8th day of October, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE