**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **DALTON GAGE HILL, Administrator and Personal Representative of the Estate of Jeffery Allen Hill, deceased,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No. CIV-24-1298-D** |
| **OKLAHOMA COUNTY CRIMINAL JUSTICE AUTHORITY et al.,** | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION**

On January 30, 2024, Decedent Jeffery Allen Hill died while at the SSM Health St. Anthony Hospital following complications from an infected tooth. The administrator and personal representative of Decedent's estate brought this action under 42 U.S.C. § 1983, alleging that Defendant Dr. Terry Deason deprived Decedent of constitutionally adequate medical care in violation of the Eighth Amendment. Doc. 53, at 9-10.[1] United States District Judge Timothy D. DeGiusti referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). Doc. 58. Before the Court is Defendant Deason's Motion for Summary Judgment, Doc. 196.

---

[1] Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

Plaintiff filed a response in opposition, Doc. 205, and Defendant Deason has replied. Doc. 211. So the matter is at issue. For the following reasons, the undersigned recommends the Court grant Defendant Deason's motion for summary judgment.

## I. Statement of Facts.

Decedent Jeffery Hill complained of tooth pain during a January 18, 2024 visit with Dr. Mark Winchester, the medical provider at the Oklahoma County Jail. Doc. 196, at 10 (Mr. Hill made a "complaint of toothache… that he states is a wisdom tooth that has cracked and is giving him pain.") (quoting Ex. 1, Turn Key Medical Records (TKHC), at 153); Doc. 205, at 7. Dr. Winchester asked another member of the medical staff to set up an appointment for Decedent with Defendant Deason, the dentist on staff at the jail. Doc. 196, at 10; Doc. 205, at 7. Dr. Winchester also verbally ordered a prescription for penicillin and Naprosyn, an over-the-counter pain medication, following a protocol for treating toothache set by Defendant Deason. Doc. 196, at 10; Doc. 205, at 7.

Decedent's appointment was initially scheduled for January 19, 2024. Doc. 196, at 11 (citing Ex. 1, TKHC 126-127, 153); Doc. 205, at 8 (citing Ex. 4, Deason Depo. at 28-29). However, Defendant Deason was not scheduled to work that day. Doc. 196, at 11; Doc. 205, at 8. As a result, Decedent's appointment was rescheduled to January 25. Doc. 196, at 11; Doc. 205, at 8.

This appointment never took place and Defendant Deason never examined or treated Decedent. Doc. 196, at 19 (citing Ex. 7, Deason Depo., at 29); Doc. 205, at 14.

Decedent did not receive the ordered penicillin between January 18 and January 22. Doc. 196, at 11 (citing Ex. 6, Winchester Depo., at 140-141); Doc. 205, at 7-8 (citing Ex. 2, Winchester Depo., at 36-37, 84-85, 88; Ex. 1, TKHC 85, 153). On January 22, Licensed Practical Nurse (LPN) Sandi Zoski saw Decedent for his dental complaint. Doc. 196, at 12 (citing Ex. 1, TKHC 77-78, 81); Doc. 205, at 9-10. After consulting with the Turn Key Health provider on call, Advanced Practice Registered Nurse (APRN) Emma Black, LPN Zoski administered 1000 mg. of penicillin and 400 mg. of Motrin to Decedent. Doc. 196, at 12; Doc. 205, at 9-10. As he was escorted back to his cell, Decedent began to exhibit respiratory distress. Doc. 196, at 13 (citing Ex. 1, TKHC 79-81); Doc. 205, at 10-11. He was returned to the medical unit, where LPN Zoski again contacted APRN Black. Doc. 196, at 13; Doc. 205, at 9-10. On APRN Black's instructions, Decedent was administered Benadryl and steroids. Doc. 196, at 13; Doc. 205, at 9-10. When he showed no improvement, an ambulance was called to take Decedent to the hospital. Doc. 196, at 13; Doc. 205, at 9-10.

Decedent was transferred to St. Anthony's Medical Center (SSM Health) and arrived at 10:23 p.m. Doc. 196, at 13 (citing Ex. 3, SSM Records, at 2); Doc. 205, at 11. There, doctors diagnosed Decedent with a severe infection of the

head and neck emanating from an infected wisdom tooth. Doc. 196, at 16; Doc. 205, at 13-14. The doctors suspected Ludwig's angina, a rare condition. Doc. 196, at 14; Doc. 205, at 12.

The next morning, January 23, SSM Health doctors drained Decedent's infection and administered IV antibiotics. Doc. 196, at 15; Doc. 205, at 13. However, SSM Health did not have an oral surgeon on call and thus Decedent's wisdom tooth was not removed. Doc. 196, at 15; Doc. 205, at 13-14.

Decedent's condition improved after the initial treatment. Doc. 196, at 16; Doc. 205, at 13-14. He was moved out of the ICU on January 25 and on that same day a nurse from SSM Health called the jail to discuss a potential discharge. Doc. 196, at 16; Doc. 205, at 13. Doctors at SSM Health apparently contemplated transferring Decedent to a facility with oral surgery so that his wisdom tooth could be removed. Doc. 196, at 17 & Ex. 3, at 75 (note dated January 29, 2024 "We will try to transfer to OU."); Doc. 205, at 14. However, no such transfer ever took place, and Decedent's tooth was never removed.

On January 29, Decedent's condition began deteriorating rapidly and he was readmitted to the ICU. Doc. 196, at 17; Doc. 205, at 14. Doctors diagnosed him with sepsis stemming from his initial tooth infection. Doc. 196, at 18; Doc. 205, at 14. Decedent passed away on January 30, 2024. Doc. 196, at 18; Doc. 205, at 14.

## II. Legal standards.

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is material if under the substantive law it is essential to the proper disposition of the claim." *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016) (internal quotation marks and citation omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. 242, 248 (1986); *see also Doe v. Univ. of Denver*, 952 F.3d 1182, 1189 (10th Cir. 2020) (explaining that a dispute over a material fact is genuine "if a rational jury could find in favor of the nonmoving party on the evidence presented" (quoting *Jones v. Norton*, 809 F.3d 564, 573 (10th Cir. 2015)).

> "The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. A movant who does not bear the burden of persuasion at trial may satisfy this burden by pointing out to the court a lack of evidence on an essential element of the nonmovant's claim. If the movant meets this initial burden, the burden then shifts to the nonmovant to set forth specific facts from which a rational trier of fact could find for the nonmovant."

*Savant Homes*, 809 F.3d at 1137 (cleaned up).

In applying this standard, the Court "'review[s] the facts and all reasonable inferences those facts support[ ] in the light most favorable to the nonmoving party.'" *Doe*, 952 F.3d at 1189 (second alteration in original)

(quoting *Evans v. Sandy City*, 944 F.3d 847, 852 (10th Cir. 2019)). "In reviewing the facts, at summary judgment, the party who bears a burden of proof on an issue bears the burden of production rather than the burden of persuasion." *Markley v. U.S. Bank Nat'l Ass'n*, 59 F.4th 1072, 1080 (10th Cir. 2023).

**III. Analysis.**

Plaintiff sues Defendant Deason in his individual capacity, claiming that Defendant Deason was deliberately indifferent to Decedent's serious medical needs under the Eighth Amendment. Doc. 53, at 3 (claiming "Dr. Deason was responsible for the wisdom tooth extraction that never occurred"); *id.* at 7 ("Dr. Deason's inaction constitutes a deliberate indifference to Mr. Hill's serious medical condition by knowingly disregarding the excessive risk an infected tooth can and did pose."); *id.* at 9.

Defendant Deason moved for summary judgment, claiming that "Dr. Deason had no involvement in Mr. Hill's care at OCDC, never provided care to him at SSM Health, and had no personal knowledge of any of Mr. Hill's dental complaints or condition until after Mr. Hill had already been transferred to the hospital." Doc. 196, at 10.

In response, Plaintiff claims that "[g]enuine issues of material fact exist as to Defendant Deason's actual knowledge; his authorship of and involvement in the January 25 CorEMR entry, Defendant's responsibility for and

administration and oversight of the OCDC dental-treatment protocol, the adequacy of his dental gatekeeping and follow-through, and whether his conduct caused or contributed to the odontogenic infection that killed Mr. Hill." Doc. 205, at 29.

For Plaintiff to prevail, these issues of fact must be not just disputed but likely to "affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. While all inferences will be drawn in favor of Plaintiff as the non-moving party, *Doe*, 952 F.3d at 1189, it is not enough at this stage for Plaintiff merely to allege a different version of events from Defendant Deason. He must also provide some evidence. Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact … is genuinely disputed must support the assertion by citing to particular parts of materials in the record…"); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language of Rule 56(c) mandates the entry of summary judgment… against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

**A. Deliberate indifference standard.**

To recover under § 1983, a plaintiff must establish that a person acting under color of state law "violated his constitutional or statutory rights." *Dodds v. Richardson*, 614 F.3d 1185, 1194 (10th Cir. 2010). "[A] prison official's deliberate indifference to a convicted prisoner's serious medical needs

constitutes cruel and unusual punishment in violation of the Eighth Amendment." *Prince v. Sheriff,* 28 F.4th 1033, 1043 (10th Cir. 2022).

The deliberate indifference standard contains both an objective and subjective component. *Id.* The objective component is satisfied if the deprivation is "sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Defendant Deason does not challenge the objective component of Plaintiff's claim, and the Tenth Circuit has "held that 'death [is], without doubt, sufficiently serious to meet the objective component.'" *Burke v. Regalado*, 935 F.3d 960, 992 (10th Cir. 2019) (quoting *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009)); *see* Doc. 196, at 23-24.

The subjective component is satisfied if the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. The official must be aware of the facts from which the inference of a substantial risk of serious harm could be drawn and must also draw that inference. *Id.* "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence such as whether the risk was obvious." *Lucas v. Turn Key Health Clinics, LLC*, 58 F. 4th 1127, 1137 (10th Cir. 2023) (internal quotation omitted).

A plaintiff "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate," but only that the official "merely refused to verify underlying facts that [s]he strongly suspected to be true, or declined to confirm inferences of risk that [s]he strongly suspected to exist." *Id.* (quoting *Farmer*, 511 U.S. at 842, 843 n.8). "An official disregards risk when he fails to take reasonable measures to abate the risk." *Id.*

The Tenth Circuit recognizes two ways to establish the subjective component of a deliberate indifference claim against an individual defendant:

> [T]he subjective component can be satisfied under two theories: failure to properly treat a serious medical condition ("failure to properly treat theory") or as a gatekeeper who prevents an inmate from receiving treatment or denies access to someone capable of evaluating the inmate's need for treatment ("gatekeeper theory"). The latter theory can apply to medical professionals when the professional knows that his or her role in a medical emergency is solely to refer the patient to another. Even a brief delay in treatment can be unconstitutional.

*Id.* (internal citations omitted).

Liability under a failure to properly treat theory must be based on more than negligence or medical malpractice. *Id.* ("A claim that a course of treatment was inadequate after the exercise of medical judgment, absent an extraordinary degree of neglect, also does not rise to disregard of serious medical need."). While a plaintiff need not show that they received no medical care in order to recover, they must show "a functional denial of care at the time the need for treatment obviously arose." *Id.* at 1139.

"Ordinarily, a medical professional will not be liable" under a gatekeeper theory "because he is the person who provides the treatment." *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). "If, however, the medical professional knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of treating the condition, and if he delays or refuses to fulfill that gatekeeper role due to deliberate indifference… he also may be liable for deliberate indifference from denying access to medical care." *Id.*

**B. Issues of fact.**

Plaintiff argues the existence of five disputes of material fact defeat the motion for summary judgment. Doc. 205, at 29.

**1. The January 25, 2024 CorEMR entry.**

On January 25, 2024, Defendant Deason's credentials were used to make an entry in the jail's medical records system, CorEMR. Doc. 196, at 20-21 (citing Ex. 1, TKHC 163); Doc. 205, at 18. The entry states: "Pt. had a severe reaction to Penn., had to be hospitalized and while there, had his wisdom tooth removed." Doc. 196, Ex. 1, TKHC 0163. Further down, under "Addendums," an additional entry listed under Defendant Deason's name states: "May have been a typing error there may have been no meds reaction. Need to check at next visit." *Id.*

Defendant Deason testified that he does not remember making the entry. Doc. 196, at 21; Doc. 205, at 18-19 (citing Ex. 2, Deason Depo., at 68, 70, 73, 81). Defendant Deason's longtime dental assistant, Christy Thompson, states in her affidavit that, although she has no personal knowledge of the particular entry, she believes based on her experience working at the jail that either Defendant Deason made the record at the request of the jail's Health Services Administrator (HSA), but that he does not remember due to his advanced age and the passage of time between the events in question and his deposition, or the HSA made the record herself. Doc. 196, Ex. 9, Thompson Decl., at ¶¶ 35-44.

Plaintiff does not make his theory especially clear, but he seems to argue that either Defendant Deason made the record and lied about it at his deposition, raising questions about his credibility, or some unknown person or persons made the record, perhaps as an attempt to cover up the jail's alleged failures to provide care to Decedent. Doc. 205, at 16 ("Admitted that Defendant Deason denied creating the entry in his deposition.... That inconsistency is a credibility dispute reserved for the finder of fact"); *id.* at 24 ("If someone else recorded the entry under Defendant Deason's credentials, the material question remains"); *id.* at 25 ("[I]f Defendant's live deposition testimony depicts an accurate sequence of events, a reasonable jury could conclude that a

gatekeeper who allowed an unauthorized third-party access to his personal electronic signature was deliberately indifferent.”).

The question of who made the CorEMR entry and under what circumstances is genuinely disputed by the parties, and Defendant Deason has provided conflicting information on this point. Doc. 205, Ex. 1, Interrogatory Responses, at 21-22 (responses to Interrogatories 23 and 24); Ex. 2, Deason Depo., at 71-75. Plaintiff insists that this issue alone makes summary judgment inappropriate. Doc. 205, at 22 (“The single most important document on this Motion is the January 25, 2024 CorEMR dental entry” which “alone creates a jury question on Defendant Deason’s knowledge”); *id.* at 29.

Even viewing the evidence in the light most favorable to the Plaintiff, the existence of the record does not establish Defendant Deason’s culpability. Assuming Defendant Deason created the record, the contents establish only that, on January 25, Defendant Deason was aware that Decedent had been transferred to the hospital, was unsure whether Decedent had reacted to penicillin, and believed that Decedent’s wisdom tooth had been removed. It does not establish that Defendant Deason knew before Decedent’s hospital transfer that Decedent needed his wisdom tooth removed; nor does it establish that Defendant Deason at any point denied Decedent care or provided inadequate care.

And if the record was made by someone at the jail other than Defendant Deason, the temporal problem remains. The entry is timestamped January 25, 2024, *after* Decedent arrived at SSM Health. Doc. 196, at 13 & Ex. 1, TKHC 163; Doc. 205, at 11. It is unclear what value the entry would have as a "cover up" for a prior failure to provide Decedent with medical care. The entry inaccurately states that Decedent's wisdom tooth had been removed. The relevant question is whether the evidence permits a reasonable inference that Deason knew the statement was inaccurate or that his involvement in the entry caused or contributed to a denial of necessary care. The entry on its own does not permit such an inference and Plaintiff provides no further facts to support it. The CorEMR entry, while disputed, is not a material fact likely to "affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248.

**2. Actual knowledge.**

Defendant Deason denies any knowledge of Decedent's dental complaints or condition before January 25, 2024, when Decedent was under SSM Health's care. Doc. 196, at 19-21. Defendant Deason was not credentialed to practice at SSM Health and could not direct Decedent's care there. *Id.* at 20; Doc. 205, at 16. In his Response, Plaintiff never actually argues that Defendant Deason *did* know anything about Decedent's complaints before his transfer to

the hospital. *See generally* Doc. 205. Nor does he point to any record evidence that would support such an allegation.

Rather, Plaintiff points to conduct that occurred after Decedent's transfer to the hospital. *See* Section III.B.1, *supra* (addressing the January 25 CorEMR entry). Plaintiff's allegations establish, at best, that Defendant Deason knew about Decedent's condition after his transfer to SSM Health, but they do not establish that Defendant Deason had any knowledge of or interaction with Decedent before his transfer. Plaintiff further argues that the "obviousness of the risk" of "an untreated, infected, and fractured molar" establishes Defendant Deason's knowledge of Decedent's need for medical care. Doc. 205, at 25-26. However, Plaintiff does not explain when or how Defendant Deason could have learned about Decedent's infection.

Therefore, Plaintiff has not identified evidence from which a reasonable jury could find that Defendant Deason was "aware … that a substantial risk of serious harm exist[ed]" while Decedent resided at the jail. *Mata*, 427 F.3d at 751.

**3. Oversight of jail dental treatment protocol.**

Plaintiff contends that Defendant Deason "personally created or directed the antibiotic-and-pain protocol under which OCDC medical staff managed Mr. Hill's fractured, infected wisdom tooth," and that, as a result, Defendant Deason "personally designed or controlled a material part of the dental-

treatment system used for Mr. Hill." Doc. 205, at 5, 18. Plaintiff does not explain the effect of these allegations on Defendant Deason's liability, provide case law for the claim, or identify the legal theory under which he is proceeding.

Plaintiff did not include this theory in his amended complaint. *See generally* Doc. 53 (Amended Complaint); Doc. 127 (Report and Recommendation denying motion to dismiss); Doc. 132 (Order adopting Doc. 127).[2] In the interest of a comprehensive explanation, the undersigned finds that the claim lacks merit.

Plaintiff never actually identifies what the dental protocols were that Plaintiff seeks to challenge. Assuming Plaintiff means the practice of prescribing penicillin and mild painkillers to inmates while they waited for dental appointments, Plaintiff[3] never suggests that the protocol was deficient.

---

[2] "As a general rule, a plaintiff should not be prevented from pursuing a valid claim just because []he did not set forth in the complaint a theory on which []he could recover," as long as adding the claim would not unduly prejudice the defendant. *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090 (10th Cir. 1991). District courts may treat new theories alleged in response to a motion for summary judgment as requests to amend the pleadings. *Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003). Opposing parties must be allowed to respond to the request to amend. *Id.* at 1212. Because the undersigned finds that Plaintiff's new theories lack merit, the Court need not allow amendment in this case.

[3] Defendant Deason argues that Plaintiff's claims regarding the creation of the dental treatment protocol are not individual capacity claims against Defendant Deason but rather official capacity claims which would implicate Oklahoma County. Doc. 211, at 6-9. The undersigned does not construe Plaintiff's claims that way. The undersigned understands Plaintiff to be

Nor does he identify what part of the protocol, or application of the protocol, caused an injury to Decedent. Plaintiff does not identify changes to the protocol that would have made a material difference in the treatment of Decedent. Plaintiff similarly fails to allege that Defendant Deason was deliberately indifferent or even negligent with regard to the creation or effect of the jail's dental policies.[4]

To the extent that Plaintiff alleges harm from the failure to administer antibiotics in a timely fashion, Decedent did not receive the prescribed penicillin until four days after he told Dr. Winchester about his tooth pain.[5] However, Plaintiff never identified evidence from which a reasonable jury could find that the failure to deliver prescribed medication was attributable to

---

alleging that Defendant Deason is personally responsible for Decedent's treatment even if he never met him because it was Defendant Deason's dental protocol that the medical staff followed.

[4] It is not clear from the record that Defendant Deason's "protocols" were official or closely followed. Defendant Deason described them as a sheet of paper tacked to the wall of the medical unit on which Defendant Deason wrote his preferred treatments for common dental complaints for Dr. Winchester or other medical staff to use when Defendant Deason was not there. *See* Doc. 205, Ex. 2, Deason Depo. at 31 ("I had Christie put a little poster on the wall, protocol.… I put down standard protocol was such and such, along with the pain tables.").

[5] Defendant Deason argues this failure is of no consequence because Decedent bought pills from his fellow inmates. Doc. 196, at 11. But there is no evidence that Decedent received the appropriate kind or dosage of antibiotics in that manner; nor do Decedent's attempts to treat himself relieve jail staff of their responsibility to provide adequate care.

Defendant Deason. Defendant Deason did not prescribe the antibiotics to Decedent and neither party suggests that Defendant Deason supervised the medication delivery system at the jail.

Plaintiff has identified no facts that are actually disputed with regard to the dental protocols in place at the jail or Defendant Deason's role in supervising them.

**4. Adequacy of dental gatekeeping.**

Plaintiff asserts that there is a genuine issue of material fact with regard to Defendant Deason's gatekeeping role. Doc. 205, at 25. Plaintiff claims that "[t]he gatekeeper theory fits this record with unusual precision," and points to Defendant Deason's position as the jail dentist, his status as "the clinician and recorder for the January 25 [CorEMR] entry" and "using jail dental protocol to substitute for an urgent dental evaluation of a fractured, infected wisdom tooth" to support that claim. *Id.*

Once again, Plaintiff's amended complaint lacks a gatekeeper theory for Defendant Deason. *See generally* Doc. 53 (Amended complaint); Doc. 127 (Report and Recommendation denying motion to dismiss); Doc. 132 (Order adopting Doc. 127). The undersigned need not address any request to amend because the claim lacks merit. *See* note 3, *supra*.

To proceed under the gatekeeper theory, Plaintiff must show that Defendant Deason's role in Decedent's care was to connect him to "other

medical personnel capable of treating [his] condition," and that he "delay[ed] or refuse[d] to fulfill that gatekeeper role due to deliberate indifference." *Sealock*, 218 F.3d at 211. But Defendant Deason did not act as a gatekeeper between Decedent and a higher level of dental care. Defendant Deason did not examine Decedent and was never notified of his condition and thus had no reason to believe that Decedent required a higher level of medical care than he received. Defendant Deason did not learn about Decedent's condition until after he was transferred to SSM Health— at which point, to the best of Defendant Deason's knowledge, Decedent was receiving the medical care he needed. Doc. 196, at 19-21. Not only did Defendant Deason not play a gatekeeping role in Decedent's case, but there is no reason to believe he played that role even in theory. As Plaintiff admits, it was ultimately Dr. Winchester's decision whether to send a prisoner to an outside provider for medical care. Doc. 205, at 19 ("Dr. Winchester—not Defendant Deason—held sole authority to authorize off-site referrals for OCDC inmates.").

Once again, Plaintiff has not identified evidence from which a reasonable jury could find Deason played a gatekeeping role. Therefore, Plaintiff's belated claims under the gatekeeper theory must fail.

**5. Causation.**

Finally, Plaintiff maintains that Defendant Deason's conduct—either directly or through the implementation of his treatment protocol—caused or

worsened Decedent's injuries. This is an essential element of Plaintiff's claim under § 1983. *See Daniels v. Gilbreath*, 668 F.2d 477, 480 (10th Cir. 1982) ("As a quasi-tort action, a showing of proximate cause is one of the requirements [of a § 1983 claim]."). However, Plaintiff fails to make his theory of causation clear.

To the extent that Plaintiff challenges the delay in receiving dental care between Decedent's appointment with Dr. Winchester and his transfer to the hospital, he has failed to show that the delay is attributable to Defendant Deason. He has provided no evidence that Defendant Deason learned about Decedent on January 18 or that Defendant Deason played any role in scheduling the dentist appointment on the 19th or rescheduling it to the 25th. Although the evidence identifies Deason as the source of the toothache protocol, Plaintiff has not identified evidence that Deason issued the patient-specific medication order or was responsible for the failure to administer the prescribed medication between the 18th and the 22nd.

Plaintiff's claim against Defendant Deason cannot proceed without evidence of causation. He has not provided any.

### C. Defendant Deason is entitled to judgment as a matter of law.

At trial, Plaintiff would bear the burden to prove that Defendant Deason was deliberately indifferent to Decedent's serious medical needs. He would have to show that Defendant Deason was "aware … that a substantial risk of

serious harm exist[ed]" and that he failed to take reasonable measures to abate the risk. *Mata*, 427 F.3d at 751; *Lucas*, 58 F.4th at 1137.

Defendant Deason has met his burden to show that there are no genuinely disputed issues of material fact. He has shown that there is no evidence that Defendant Deason was aware of any circumstances pointing to a serious risk of harm before Decedent was transferred to SSM Health. There is evidence that Defendant Deason learned about Decedent's condition secondhand after the transfer to SSM Health, but at that point Decedent's medical care was outside of Defendant Deason's control.

In response, Plaintiff has failed to meet his burden to "set forth specific facts from which a rational trier of fact could find for" Plaintiff. *Savant Homes*, 809 F.3d at 1137. Instead, Plaintiff points to facts that are not genuinely disputed (Section III.B.2, *supra*, addressing Defendant Deason's actual knowledge), or that are disputed but not material even in the aggregate (Section III.B.1, *supra*, addressing the January 25, 2024 CorEMR record). He also added two new theories of liability, neither of which was adequately briefed or supported by record evidence or case law. *See* Sections III.B.3 (addressing Oklahoma County Detention Center's dental treatment protocol) and III.B.4 (addressing the gatekeeper theory).

Viewed in the light most favorable to the Plaintiff, the evidence could support a jury finding that (1) Defendant Deason knew Decedent had an

upcoming dental appointment for a toothache; (2) Defendant Deason never had an opportunity to examine Decedent because Decedent was transferred to SSM Health before his scheduled appointment; (3) Defendant Deason learned that Decedent was at the hospital on January 25, and someone made a record in the jail's medical record keeping system, CorEMR, to that effect; and (4) Defendant Deason created a protocol recommending prescription of penicillin and mild painkillers for complaints of toothache. These facts do not support a finding of deliberate indifference to a serious medical need.

Defendant Deason is thus entitled to judgment as a matter of law.

## IV. Recommendation and notice of right to object.

For the reasons above, the undersigned recommends the Court grant Defendant Deason's motion for summary judgment. Doc. 196.

The undersigned advises the parties of their right to file an objection to this report and recommendation with the Clerk of this Court on or before November 16, 2026, in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2). The undersigned further advises the parties that failure to make a timely objection to this report and recommendation waives the right to appellate review of both factual and legal questions contained herein. Moore v. United States, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation does not terminate the referral to the undersigned Magistrate Judge in this matter.

SO ORDERED this 2nd day of November, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE